UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

**ANNA VERBSKY SAGAMI**
and
**DESIGN-A-WAY PUBLICATIONS LLC,**

Plaintiffs,

Case No. 3:10-cv-152

v.

**PALMER MARKETING ENT, LLC**
and
**CENTER COURT DIRECT, INC,**

Defendants.

**BRIEF IN SUPPORT OF PLAINTIFFS' DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF JEFFREY CORDRAY AND HIS REPORT**

Plaintiffs Anna Verbsky Sagami and Design-A-Way Publications, LLC by their attorneys Murphy Desmond S.C. submit the following brief in support of their Motion to exclude the testimony and report of Defendants' designated expert witness Jeffrey Cordray.

## RELIEF SOUGHT

Plaintiffs seek the Court's entry of an Order precluding the testimony of Jeffrey Cordray on all matters related to Plaintiffs' damages as a result of Defendants' copyright infringement because Cordray's "credentials" do not satisfy the Daubert criteria, Cordray used a flawed damage analysis i.e. the wrong damage standard and his opinions are based on uncorroborated hearsay. Alternatively, Plaintiff's seek an order excluding all opinions of Mr. Cordray based on uncorroborated hearsay evidence from an interested party, and any opinion regarding Plaintiffs' proof regarding Defendants' gross revenues as a result of the copyright infringement.

## A. FACTS

Defendants Palmer Marketing Ent, LLC and Center Court Direct, Inc. (hereinafter "Defendants") engaged the services of Jeffrey Cordray to "review and comment on the Plaintiffs Sagami's and Design-A-Way Publications LLC's Disclosure and Itemization of Damages . . . ." (Report of Jeffrey Cordray dated August 22, 2011 (hereinafter "Cordray Report") at ¶2.) Cordray's deposition was taken on November 4, 2011, and a transcript of his deposition was prepared (hereinafter "Cordray Deposition").

### I. Basic Qualifications

Cordray has no prior experience analyzing or testifying on damages in a copyright infringement case. In his Report, Mr. Cordray provides a list of twelve cases in the preceeding four years for which he has provided expert witness testimony at trial or at a deposition. (Cordray Report at p. 25.) During his deposition, Mr. Cordray said he could not recall whether any of the twelve cases listed in his Report encompassed an analysis or opinion with regard to copyright infringement damages. (Cordray Deposition at p. 14, lines 12-18.) Mr. Cordray could not recall a single instance of having provided testimony with regard to the calculation of copyright infringement damages at a trial, arbitration or deposition within the last ten years. (Cordray Deposition at p. 14, lines 19-22.) Similarly, Cordray could not remember having been retained as an expert witness, either by a plaintiff or defendant, to provide expert analysis with regard to the calculation of damages in a copyright infringement matter in the last four years, or since January of 2011. (Cordray Deposition at p. 20, lines 4-13, 24-25 and p. 21, lines 1-6.) Moreover and more importantly, Cordray was unable to articulate the test for determining damages as a result of copyright

infringement. In fact, when asked to describe the elements used to calculate damages or the remedies in a copyright infringement case, without looking at his report, he responded inter alia that he did not realize that his deposition would be a "memory test" and characterized the question as "extremely broad . . . ." (Cordray Deposition at p. 25, lines 9-25.)

## II. Test for Damages

Cordray acknowledged during his deposition that this is a copyright and trade dress infringement case. (Cordray Deposition at p. 24, lines 14-17.) However, Cordray applied a patent infringement test in his analysis of Plaintiffs' damages and as the sole basis for his opinions in his report. During his deposition, Cordray stated that he had utilized the *Panduit* case (*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F. 2d 1152 (6th Cir. 1978)), in his analysis of the damages claimed by Plaintiffs in this case. (Cordray Deposition at p. 33, lines 12-20). The *Panduit* case is a patent infringement case and is often cited to describe the elements that a patent owner must prove to recover as damages the lost profits on sales the patent owner would have made absent the infringement. Those elements are: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) the patent owner's manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit the patent owner would have made. *Panduit*, 575 F.2d at 1156.

In his Report, Cordray references these elements and Plaintiffs' failure to address them as a basis for his opinion that Plaintiffs' computation of lost profits from lost sales is "fundamentally flawed . . . ." (Cordray Report at ¶¶10-11; *See also*, Cordray Deposition at p. 33, lines 15-20.) In his deposition, Cordray acknowledged that *Panduit* was a patent case, not a copyright case. (Cordray Deposition at p. 33, lines 21-25, p. 34, lines 1-3.)

In his Report, Cordray also cited *Rite-Hite Corp. v. Kelley Co, Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) as a source for the following opinion: "[t]ypically, sales made together as a matter of convenience or business advantage are not compensable as lost convoyed sales." (Cordray Report at ¶18 and fn. 31.) Cordray admitted in his deposition that he utilized the elements of *Rite-Hite* in his analysis of this litigation. (Cordray Deposition at p. 36, lines 17-22.) Cordray acknowledged that *Rite Hite* was a patent case. (Cordray Deposition at p. 36, lines 23-25, p. 37, lines 1-8.) Cordray's reliance on *Rite-Hite* formed a basis for his opinion that Plaintiffs' claim for lost profits from lost convoyed sales had a "fundamental flaw . . . ." (Cordray Report at ¶18.)

During his deposition, Cordray was also asked whether he conducted any type of analysis or calculation with regard to Center Court's gross revenue or net profits associated with the alleged copyright infringement, and Cordray stated that he did not make such a calculation. (Cordray Deposition at p. 29, lines 4-22.) Moreover, Cordray was unable to articulate or describe the test for damages in a copyright infringement case (Cordray Deposition at p. 25, lines 9-25).

## III. Basis of Opinion

Cordray's opinion that products, such as those at issue in this case, have relatively short lifespans which, in turn, appears to relate to his opinion that Plaintiffs' computation of lost profits from lost sales is "fundamentally flawed," is based solely on a conversation he had with Steve Smous, President of Defendant Center Court Direct, Inc. (Cordray Report at ¶¶8, 12; Cordray Deposition at p. 22, lines 23-25, p. 23, lines 1-25, p. 24, lines 1-3.) Cordray

undertook no review of any other data, statistics, or analyses that discussed the product duration for such products. (Cordray Deposition at p. 23, lines 24-25, p. 24, lines 1-3.)

Similarly, Cordray's statement that Plaintiffs had "at least two other competitors" in the marketplace is based solely on a conversation with Mr. Smous. (Cordray Report at ¶¶8, 13; Cordray Deposition at p. 37, lines 12-25, p. 38, lines 1-5.) That statement, in turn, forms a basis for Cordray's opinion that Plaintiffs' computation of lost profits from lost sales is "fundamentally flawed" because Plaintiffs did not discuss alternative competitors in the market. (Cordray Report at ¶¶10, 11, 13.)

## B. ARGUMENT

The admissibility of defendant Center Court's expert evidence is governed by Rule 702, Fed. R. Evid., as interpreted by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 469 (1993), and subsequent cases following *Daubert*.

Rule 702 sets the parameters for the admissibility of expert testimony in federal courts as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the tesmony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 of the Federal Rules of Evidence "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See Daubert,* 509 U.S. at 597; *see also Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S.

137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (holding *Daubert* applies to all expert testimony). The purpose of this gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho*, 526 U.S. at 152. The Court functions as a "gatekeeper" whose role is "to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves." *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). The Court must determine whether a party's proposed expert is qualified, whether his opinions are grounded in a proper basis, and whether his testimony will assist the jury. *Kumho*, 526 U.S. at 147.

Based on his Report and his answers during his deposition: (1) Cordray lacks basic qualifications to be an expert witness in this copyright and trade dress infringement case, (2) Cordray applied the wrong legal test for damages, and (3) Cordray's opinion relies substantially on hearsay evidence that he did not corroborate or independently analyze.

## I. Cordray Lacks Basic Qualifications.

Cordray lacks basic qualifications to testify as an expert witness in this copyright and trade dress infringement case. Cordray cannot recall ever being engaged to testify or provide analysis on damages in a copyright infringement matter. While he demonstrates knowledge in other areas of intellectual property, he lacks experience in analyzing damages in a copyright infringement matter. Courts often have excluded expert testimony where the proffered expert lacked training or experience in the specific area relevant to the case. *See, e.g., United States v. Chang*, 207 F.3d 1169, 1171-1174 (9th Cir. 2000) (affirming exclusion

of expert testimony by international finance expert on authenticity of "Japanese 'Certificate of Payback Balance' " because he lacked training or experience in identification of counterfeit securities); *see also Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706 (8th Cir.2001) (finding hydrologist who specialized in flood management not qualified to provide expert testimony on safe warehousing practices, in action for breach of bailment contract based on flood damage sustained to property stored in warehouse, because he had no education or experience in warehousing); *Wilson v. Woods,* 163 F.3d 935, 937–938 (5th Cir.1999) (affirming exclusion of expert testimony on automobile accident reconstruction where proposed expert had substantial experience in fire reconstruction but had little training or experience in automobile accident reconstruction); and *Kline v. Lorillard,* 878 F.2d 791, 799–800 (4th Cir.1989) (holding trial court erred in admitting expert testimony on issue of whether defendant's "shift in credit practices was an unjustified credit discrimination and price discrimination" in violation of Robinson–Patman Act where expert had masters degree in business administration, but had no experience or training in the areas of antitrust or credit).

## II. Cordray Applied the Wrong Legal Test to His Analysis of Plaintiffs' Damages.

Section 504 of the Copyright Act sets forth the remedies for copyright infringement and lays out the test for damages and lost profits:

> § 504. REMEDIES FOR INFRINGEMENT: DAMAGES AND PROFITS
> (a) In General.— Except as otherwise provided by this title, an infringer of copyright is liable for either—
> (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
> (2) statutory damages, as provided by subsection (c).

> (b) Actual Damages and Profits.— The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the *copyright owner is required to present proof only of the infringer's gross revenue*, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. §504 (Emphasis added).

Although Cordray acknowledges that this is a copyright infringement case and not a patent infringement case, he applied the damages test and standards from patent infringement cases, such as *Rite-Hite* and *Panduit*, *supra,* instead of applying the copyright damages test expressly set forth in §504. His opinion that Plaintiffs' damages calculation is "fundamentally flawed" is based on such misapplied test and standards.

Cordray's opinions regarding Plaintiffs' damages calculation are unreliable and, therefore, inadmissible. *Bailey v. Allgas, Inc.*, 148 F.Supp.2d 1222 (N.D. Ala. 2000)(holding that an expert opinion was unreliable and, therefore, inadmissible based on variety of factors including a failure by the expert to apply the proper relevant geographic market test under the Robinson-Patman Act).

Central to any copyright infringement case, following the clear wording of §504 of the Copyright Act, is the copyright owner's proof of the infringer's gross revenue. *See* §504, *supra*. Cordray, however, failed to make any calculation of Defendants' gross revenues in this case. Accordingly, his opinion on gross revenues lacks the reliable foundation required under *Daubert* and *Kumho*.

**III. Cordray's Opinion Regarding Plaintiffs' Damages Calculation Relies Substantially on Uncorroborated Hearsay Evidence.**

Key aspects of Cordray's opinions are based solely on hearsay evidence, without any corroboration on his part. His opinion that products, such as those involved in the present case, have relatively short lifespans and his opinion that Plaintiffs had at least two competitors which, in turn, relates to his opinion that Plaintiffs' computation of lost profits from lost sales is "fundamentally flawed," is based solely on a conversation he had with an interested party in this case, Steve Smous, President of Defendant Center Court Direct, Inc. Cordray undertook no review of any other data, statistics, or analyses that discussed the product duration for such products and appears to have taken Smous' statements as fact.

Smous' statements are not the type of hearsay evidence reasonably relied on by experts. *See*, *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, FN 4 (10th Cir. 2006) (upholding, *inter alia*, a district court finding that an expert witness had failed to base his opinions on appropriate facts, noting that opinions were based solely on facts provided by an interested party, ruling that "[n]o reasonable economist would simply accept the self-serving statement of an interested party as fact.).

**C. <u>CONCLUSION</u>**

Jeffrey Cordray's opinions in this case are the result of a lack of experience analyzing damages in a copyright infringement case. Admittedly, he does not recall having been professionally engaged to undertake such a task anytime over the last ten years. Such inexperience is fully manifest in his misapplication of patent infringement tests and standards to this copyright and trade dress infringement case. His failure to independently conduct calculations regarding a central issue in copyright infringement cases—the alleged

infringer's gross revenues—further illustrates his inexperience. His substantial reliance on uncorroborated hearsay evidence by an interested party, which he appears to have accepted as fact, underscores the opinion's unreliability.

Based on the foregoing, Mr. Cordray should not be permitted to offer opinions on Plaintiffs' damages. Alternatively, all opinions based on uncorroborated hearsay evidence from an interested party, and any opinion regarding Plaintiffs' proof on Defendants' gross revenues should be excluded.

Dated this 14th day of November, 2011.

**MURPHY DESMOND S.C.**
Attorneys for Plaintiffs

By: /s/
Margery Tibbetts-Wakefield
State Bar No. 1012321
Mario D. Mendoza
State Bar No. 1023879
400 Midland Court, Suite 102
Janesville, WI 53546
(608) 257-7181

4843-7945-2429, v. 1